IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

"O" COMPANY, INC. and
HEALTH DELIVERY SYSTEMS,
INC., WORLD DENTAL IMPLANTS,
INC. and DAVID DALISE, DDS.,

        Plaintiffs,

vs.                                                    CIVIL NO. 98-981 WJ/LFG-ACE

OSTEOTECH, INC.,
dba Cam Implants, BV,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION TO COMPEL

THIS MATTER is before the Court on Defendant Osteotech, Inc.'s Motion to Compel [Doc. 209]. The Court considered the motion, response and reply and determines that oral argument is not necessary.

### Background

Plaintiffs assert that Defendant Osteotech, Inc. engaged in fraud and breached a warranty in connection with Plaintiffs' purchase of dental implant coatings from various subsidiaries in the early 1990's. The Plaintiffs contend that the coatings failed causing complete failure of the implants in patients' mouths. Plaintiffs also allege that they suffered significant financial losses as well as damage to their reputation as a result of the failures.

### Present Motion

Osteotech seeks an order compelling Plaintiffs to make available some randomly selected implants for testing. Plaintiff, "O" Company, on the other hand, contends that it has only fifty-seven

of the CAM coated implants remaining out of the thousands that were sold around the world. Given the limited number of implants available to use as evidence in the trial, Plaintiffs contend that they offered Osteotech two choices. First, several implants would be cut in two with a fine blade diamond saw, and each party would be given half of the same implant. With this proposal, both parties would have the opportunity to perform the same tests on the same coating. Secondly, Plaintiffs offered to provide implants with the condition that Osteotech's testing be done under the observation of Plaintiffs' experts. Osteotech rejected both proposals.

Osteotech argues its right to test the very product which is alleged to be defective. In a products liability case, what could be more relevant to the parties' claims and defenses than the specific examination and testing of the very article deemed to be the defective product? This is unlike many other products liability cases where the destructive testing of the proposed defective product would rob the plaintiff of its ability to present evidence in an upcoming trial. For example, where only one allegedly defective product exists, courts can fashion appropriate restrictions on sampling testing methods to ensure that both parties have an equal opportunity to sufficiently present their claims and defenses.

Here, "O" Company has fifty-seven samples of the disputed defective product. Plaintiffs have made a reasonable offer to saw some of the implants in half, keep one-half of the implant and provide Osteotech with the other. That proposal is good as far as it goes. The problem is, it doesn't go far enough.

At this stage, it is impossible to know what is the cause, if any, of the implant's alleged failure. For example, if the implant failed because of the porous nature of the coatings or susceptibility to deterioration in a wet environment, Osteotech would not be able to adequately test the implant if the only sample it has is sawed in half. Osteotech should have its individual opportunity to engage in an

independent determination of the cause of the alleged failure.

The Court determines that six implants should be used for this process. Three implants will follow Plaintiffs' first suggestion, that is, of the three implants, they are to be cut in half by using a diamond saw or other appropriate fine-cutting instrument, with one-half of each sample retained by Plaintiffs and one-half provided to Osteotech. In addition to this "half sample," Plaintiffs shall provide three complete dental implants to Osteotech. Plaintiffs are no more entitled to be present and observe Osteotech's testing of the sample than Osteotech to be present when it tested its own samples. Both parties are free to examine, during expert depositions, conditions and antecedents concerning the testing of the implants. Plaintiffs shall provide Osteotech with the three half implants and three whole implants within twenty days. The Court denies "O" Company's request to observe Osteotech's testing process.

## Whether Defendant is Restricted to One Deposition of Frederick Georgette

Osteotech seeks to take a Fed. R. Civ. P. 30(b)(6) deposition of a non-party, Bio-Coat, Inc. Coincidently, the 30(b)(6) deponent, Frederick Georgette has been identified by Plaintiffs as their liability expert. The issue then arises whether Osteotech is restricted to a single deposition or may take two depositions--one of the 30(b)(6) witness, and the other of the same deponent as an expert.

A 30(b)(6) witness is not offering opinion testimony, but is providing factual information. Thus, to the extent that Osteotech seeks to take a 30(b)(6) deposition of a non-party, it may proceed subject to any restrictions or limitations that may be imposed by the federal court in Michigan. Osteotech, however, is not precluded from proceeding on its own expert discovery of Plaintiffs' experts. Thus, in accord with the limitations imposed on the parties on length of depositions, Osteotech may proceed to take the expert deposition of Frederick Georgette and will still be entitled to take Mr. Georgette's 30(b)(6) deposition.

**Whether Bio-Coat Can Be Compelled to Provide Samples of Its Own Products**

Osteotech also seeks coatings of implants supplied to CAM[1] by Bio-Coat, Inc. Bio-Coat is not a party to this litigation, but it has coated implants for CAM since 1992 and apparently is "O" Company's current coater. Osteotech served a subpoena directly on Bio-Coat in the Eastern District of Michigan. According to Plaintiffs, Bio-Coat has retained its own counsel in Michigan and intends to oppose the requested production based on concerns with the potential disclosure of trade secret and confidential information.

Osteotech also has requested samples of the Bio-Coat coatings from Plaintiffs directly.[2] Osteotech argues that the characteristics of the implants supplied by Bio-Coat is critical to its defense, particularly in view of Plaintiffs' contention that the CAM coated implants failed at a much higher rate than implants coated by other coaters, like Bio-Coat. In addition, Osteotech notes that Plaintiffs have retained Frederick Georgette, the President of Bio-Coat, as an expert in this litigation. Mr. Frederick provided a report that the CAM coated implants are defective and stated in his affidavit that he tested several CAM coatings "and . . . compared them to coating produced by [his] company. . . ." [Ex. A, ¶ 16, attached to Osteotech's Reply.]

Plaintiffs refuse to produce samples of the Bio-Coat implants. They argue that Osteotech fails to demonstrate the relevancy of testing Bio-Coat implants since only the CAM coated implants are allegedly defective for purposes of this lawsuit. In addition, Plaintiffs assert that trade secrets and/or confidential commercial information will be disclosed if Osteotech is allowed to test Bio-Coat

---

[1] CAM Implants B.V. and CAM Implants, Inc. were Osteotech's subsidiaries.

[2] According to Osteotech, Plaintiffs represented that Osteotech need not make a formal request to produce the implant samples. Rather, the parties have engaged in informal conversations concerning issues involving the testing of the implant coatings. Thus, this motion to compel is a result of those failed conversations rather than written document requests and objections.

coatings. Osteotech contends that Plaintiffs' trade secret argument cannot be maintained because the proposed testing of the implant coatings would not reveal any trade secrets or manufacturing processes. Rather, Osteotech seeks to test a "finished product" that has been sold to the public and been implanted in patients.

Plaintiffs have samples of Bio-Coat coatings since Bio-Coat is "O" Company's current coater. For example, Plaintiffs argue that the court should deny Osteotech's request for the Bio-Coat coated implants "through the provision of Plaintiff's inventories." [Doc. 211, p. 5.] Thus, it is clear that Plaintiffs are in possession of the requested implant coatings.

Generally, this Court would not sustain a request for a product manufactured by a non-party, particularly if the primary reason for requesting the item is because it is similar to the product that is at issue in this litigation. However, these circumstances are different. First, Plaintiffs have retained the president of the non-party manufacturer, Bio-Coat. The expert already has testified that he tested the coatings at issue, which he specifically compared to the coatings produced by his own company. Thus, the basis of his opinion or some part of his opinion appears to be that the product is defective or deficient as compared to his company's product. The Plaintiffs then have made the Bio-Coat implant coatings relevant.

Second, the Court disagrees with Plaintiffs' position that the sample Bio-Coat should not be produced based on trade secret concerns. For one thing, Plaintiffs do not have standing to raise those concerns on behalf of Bio-Coat. Even if they did have standing, any such argument is tenuous at best since it seems that Bio-Coat or Plaintiffs elected to compare the coatings in dispute with those manufactured by Bio-Coat. Third, the fact that the Bio-Coat coatings are sold to and used by the public undermines the argument that the coated-implants cannot be obtained for testing. In addition, Plaintiffs have not established that testing will reveal manufacturing secrets.

Finally, because the requested items are in possession of a party to this litigation and because those tangible things have been made relevant to this action by Plaintiffs, the Court will require that Plaintiffs produce four (4) samples of the Bio-Coat coatings as requested by Osteotech. Any results from the testing of those implant coatings should be produced in accordance with the Confidentiality Agreement negotiated by the parties.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge