# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

"O" COMPANY, INC., HEALTH DELIVERY
SYSTEMS, INC., WORLD DENTAL IMPLANTS,
INC., and DAVID DALISE, DDS, individually
and as president of "O" COMPANY, INC.,
HEALTH DELIVERY SYSTEMS, INC., and
WORLD DENTAL IMPLANTS, INC.,

        Plaintiff,

vs.                                                                                          Civil 98-0981 WJ/LFG

OSTEOTECH, INC., d.b.a. CAM IMPLANTS B.V.,

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon a Motion for Summary Judgment filed by Defendant Osteotech, Inc., on February 12, 2003 **(Doc. 182)**. Having considered the parties' briefs and the applicable law, I find that Defendant's motion is not well-taken and will be denied. I also revisit Plaintiff's Motion to Amend Complaint, filed April 12, 2001 (Doc. 92), which the Court previously denied on August 23, 2001 (Doc. 118).

### Background

Plaintiffs allege that Defendant sold them defective coating and coating services for dental implants. Plaintiff David Dalise, D.D.S., ("Dalise") is an dental implantologist and the president of the other three plaintiff companies that are or were in the business of dental implantology. The Complaint asserts that from 1990 to the end of 1992, "Cam Implants B.V." ("CAM Entities") sold large quantities of a special coating service to "O" Company for dental implants, with the

knowledge that the coated implants would be in turn sold by "O" Company to practicing implantologists, including Health Delivery Systems, Inc. ("HDI"), World Dental Implants ("WDI"), and Dalise for surgical placement in dental implant patients. Numerous reports of implant failure occurred after 1991. The problem was allegedly due to Defendant's failure to apply the coating properly to the implants, which resulted in the coating breaking down and dissolving after the implants were placed in the jaws of dental implant patients. Many patients of HDS, WDI and Dalise suffered severe bone loss, danger of pathologic fracture, and inflammation and cyst-like lesions. Plaintiffs addressed their patients' concerns with surgical correction, implant replacement and the payment of damages. The complaint, initially filed in July 1998 in state court in the Second Judicial District, names "Osteotech, Inc., d.b.a. CAM Implants B.V." as the sole Defendant, and asserts claims of breach of express and implied warranties (Counts III and IV),[1] negligent and fraudulent misrepresentation (Counts V and VI), and violations of the Unfair Practices Act (Count VII).

Defendant Osteotech removed the action to federal court on August 14, 1998 on the basis of diversity. Since then, the case has been hotly contested and has dragged on in this Court for several years.[2] In this motion, Defendant contends that Osteotech was a parent company with no involvement in any of the tortious activities alleged in the Complaint against CAM Entities and that because Plaintiffs allege no wrongdoing by Osteotech, dismissal is appropriate.

Osteotech, Inc. ("Osteotech") is self-described as a Delaware corporation "primarily

---

[1] On March 17, 1999, the Court dismissed Plaintiff's claims of negligence and strict liability. Doc. 36.

[2] The case was reassigned to a complex case management track on April 3, 2003. Doc. 207.

2

engaged in the business of processing human tissue for use in implantation by spine and orthopedic surgeons." Mot. for Sum.J., ¶ 1. Defendant maintains that it has no legal responsibility for the coating sold by the CAM Entities because Osteotech has never been in the business of implant coating, and because the CAM Entities began selling coatings to Plaintiffs prior to the time they were acquired as subsidiaries by Osteotech. Under the historical statement of facts, which Plaintiffs do not dispute, Osteotech and CAM Entities did not become business relatives until 1992, several months before the time period relevant to this lawsuit ended. Before 1992, CAM Implants, Inc. ("CAM B.V.") was a separate Netherlands corporation which was engaged in the sale of coatings for various medical implant devices, including dental implant devices. In 1991, the owners of CAM B.V. formed CAM Implants, Inc. ("CAM Inc."), a U.S. Corporation and started operations in Colorado. Both CAM B.V. and CAM Inc. (collectively, the "CAM Entities") were owned by the same parent corporation, HC Implants B.V., a Netherlands corporation. In May 1992, Osteotech, Inc. formed a Netherlands holding company, Osteotech, B.V., and at the same time acquired ownership of HC Implants and by extension, the CAM Entities.

In this action, Plaintiffs served Osteotech with a copy of the Summons and Complaint, but did not separately name or serve either of the CAM Entities. Plaintiffs' motion to amend the complaint by adding additional parties, including the CAM Entities, was denied by Judge Leroy Hansen on August 23, 2001. Doc. 118.

*Legal Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

3

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Jones et al v. Kodak Med'l Assistance Plan, 169 F.3d 1287, 1291 (10th Cir. Utah) (citing Fed.R.Civ.P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). When applying a summary judgment standard, I must construe the factual record in the light most favorable to the party opposing summary judgment. Butler v. City of Prairie City, Kan.,172 F.3d 736, 744 (10th Cir. 1999).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Jones et al v. Kodak Med'l Assistance Plan, 169 F.3d 1287, 1291 (10th Cir. Utah) (citing Fed.R.Civ.P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). When applying a summary judgment standard, I must construe the factual record in the light most favorable to the party opposing summary judgment. Butler v. City of Prairie City, Kan.,172 F.3d 736, 744 (10th Cir. 1999).

## Discussion

Plaintiffs do not dispute that either CAM Inc. or CAM B.V. sold implants to "O" Company. CAM B.V. started selling coating for dental implants to "O" Company beginning in 1990, filling orders placed by "O" Company. The last invoice from CAM was dated April 23, 1991. Jeffries Decl., Ex.A. In June 1991, following the setting up of CAM Inc.'s operations in the United States, CAM Inc. began selling coatings for dental implants to "O" Company through September 1992. The last CAM invoice was dated September 18, 1992. Jeffries Decl., Ex. B. Nevertheless, Plaintiffs maintain that liability arising from the defective coating, if not resting

solely with Osteotech, is at least shared by Osteotech. Contending that Osteotech and the CAM Entities are one and the same, Plaintiffs dispute Defendant's statements that Osteotech made no representations or warranties to Plaintiffs concerning the quality of CAM Entities' coatings and that Osteotech itself never received orders from "O" Company. Fact 8.

In June 1993, Dalise, on behalf of "O" Company, wrote Michael Jeffries at Osteotech voicing concerns about the implant failures his Dalise's patients had experienced. Pltffs' Ex. 4. Over the next several months, the two exchanged correspondence. Jeffries offered to independently test any unused implants provided by Dalise, which consisted of a comparison between three implants that had been coated by CAM, and two coated by another source. Jeffries sent the test results, which showed no "statistical differences between those coated at CAM and those coated at the other facility[,]" back to Dalise. In an October 18, 1993 letter, while informing Dalise of the testing results, Jeffries also asked Dalise for payment of unpaid invoices with CAM" that went back to March 1991 in the amount of $37,964.00 Ex. 5.

**Whether Osteotech is the Wrong Defendant in this Case**

Plaintiffs view Osteotech's assertions in the present motion almost in terms of an ambush, stating that Defendant waited until the limitations period ran out on February 24, 2002 before revealing that it was not the real party in interest. The actual play of events is not quite so extreme. As Judge Hansen noted in the Order denying Plaintiffs' motion to amend, Plaintiffs had sufficient opportunity and information about corporate relationship between Defendant and the CAM Entities well before the statute expired. See Court's Order, Doc. 118 at 3.[3] At the same

---

[3] Defendant's supplemental answers to interrogatories in September 1999 provided information on the corporate relationship between Osteotech and the CAM Entities, Deklava Decl., Ex. C, yet Plaintiffs waited almost a year and a half (three years after the complaint was

time, however, Plaintiffs' effort to amend the complaint to add CAM Entities as a party (or the Court's Order, for that matter) does not necessarily lead to a foregone conclusion that Plaintiffs sued the wrong party, or that Osteotech assumed no liability for the allegedly wrongful actions of the CAM Entities, as Defendant would have it.

Although technically the CAM Entities (i.e., either CAM B.V. or CAM Inc.), and not Osteotech, sold coatings to "O" Company, I find that the dispositive question is whether Osteotech nevertheless assumed liability for the business dealings between its subsidiaries and Plaintiffs.[4] Defendant describes its motion as based on three "unremarkable propositions"(Reply at 1): that Plaintiffs purchased implant coating from the CAM Entities, that the CAM Entities are separately incorporated subsidiaries of Osteotech, and that Osteotech is not liable to Plaintiffs for any alleged defects in coatings sold by its subsidiaries. The third proposition advanced by Osteotech is the snag. The letters dated July 2, 1993 and October 18, 1993, written by Jeffries on Osteotech letterhead, in which Jeffries responded to Dalise's complaints about the implant coatings, create a summary judgment impasse for Defendant. Pltffs' Ex. 5. Both the tone and language of the letters would have reasonably conveyed the impression to Dalise that he had directed his inquiry to the appropriate entity. No where in those letters was Dalise informed that Osteotech was not responsible for any problems relating to the quality or integrity of the implants sold by the CAM Entities, nor was Dalise referred to the CAM Entities for further action. Instead, Jeffries offered to test a sample of unused implants from Dalise's inventory.

---

filed and ten months *before* the statute of limitations expired, to file their motion to amend.

[4] Defendant fuses the two issues. See Reply at 4, n.4. Any formal distinction between Osteotech and its subsidiaries still begs the question of whether Osteotech, by its conduct or business dealings, assumed or accepted liability for CAM Entities.

Osteotech's correspondence with Dalise could have led Dalise to believe that he was dealing with the entity responsible for the integrity of the implant coating. Based on the same evidence, a reasonable juror could believe that the letters demonstrate that Osteotech accepted liability for the CAM Entities.[5] I conclude that the evidence, when viewed most favorably to Plaintiffs, could demonstrate that Osteotech was liable for the alleged implant coating defects. Accordingly, summary judgment is denied on Defendant's motion.

**Amending the Complaint**

In the Order denying Plaintiff's Motion to Amend, Judge Hansen found that the motion was "unduly delayed, is untimely, and would result in prejudice to Defendant." Doc. 118 at 3. However, with the benefit of having digested the parties' pleadings on the instant motion, I conclude that Defendant's position rests on a corporate technicality that should not, in this instance, preclude Plaintiffs from amending the complaint to add the CAM Entities as a Defendant.

Under Fed.R.Civ. P.15(c)(3), an amendment to a pleading relates back to the date of the original pleading "if the party has received notice of the action so it will not be prejudiced in maintaining a defense on the merits, and if the party knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against this party in the first instance." Shea v. Esensten, 208 F.3d 712, 720 (8th Cir.), cert. denied, 531 U.S. 871 (2000) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330

---

[5] I find it unnecessary for purposes of this motion to delve into an analysis to determine whether Defendant's corporate veil should be pierced. Moreover, although both parties broach the issue in their briefs, Plaintiffs have not alleged the contours of such a theory in their complaint. See, e.g., Pampillonia v. RJR Nabisco, Inc., 138 F.2d 459 (2d Cir. 1998) (finding that the complaint failed to allege facts that could establish a basis for piercing the corporate veil).

(1971). The determination of whether an amended pleading should be allowed and whether it relates back to the date of the original pleading are matters within the sound discretion of the trial court. Id.

The circumstances in this case satisfy the Rule's requirements of fair notice and awareness of a mistake in identity. Plaintiffs seek only to add the CAM Entities as a Defendant. They have not otherwise modified or added any of the claims that were originally asserted in the complaint. Fed.R.Civ.P. 15(c) (requiring that amendment that relates back must arise from same transaction or occurrence as the original pleading, under Rule 15(c)(2)). The correspondence that shot back and forth between Michael Jeffries of Osteotech and Dalise is evidence of Osteotech's awareness of the problems Plaintiffs were having with the implants. Further, the Answer, which Osteotech contends should have clued Plaintiffs in to the fact that they were suing the wrong entity, is also evidence that Defendant was well aware of the mistake in identity – and the reason for the mistake in identity – which it asserted in that pleading.

Thus, it can hardly be said that Osteotech, as the parent corporation, either did not have sufficient notice of the pendency of the action so as not to be prejudiced, or could not have known that but for Plaintiff's mistake and confusion on the corporate niceties, CAM Entities would have been named in the complaint. Cmp., Andrews v. Lakeshore Rehabilitation Hospital, 140 F.3d 1405, 1408 n.5 (11th Cir. 1998) (under Rule 15(c)(3), parent company is not prejudiced by having amendments naming it relate back to the filing of a complaint against its wholly owned subsidiary). Further, given the reasonable confusion generated by Defendant's corporate family tree, Plaintiffs' failure to separately name and serve the CAM Entities is clearly a mistake, rather than a lack of knowledge. Cmp., Shea v. Esensten, 208 F.3d at 720 (in action where plaintiff did

not bring suit against the wrong parties, lack of knowledge of relationship between entities does not satisfy requirement of error as to identity of proper party).

Accordingly, I find that Plaintiffs should be allowed to amend the original complaint by adding the CAM Entities as an additional party, and that such amendment relates back to the original complaint. The Court's Order denying Plaintiff's motion to amend shall be vacated (Doc. 118), and the motion to amend (Doc. 92) shall be granted.

**THEREFORE,**

**IT IS ORDERED** that the Motion for Summary Judgment filed by Defendant Osteotech, Inc. **(Doc. 182)** is hereby DENIED;

**IT IS FURTHER ORDERED** that the Court's Order entered on August 23, 2001 **(Doc. 118)** is hereby VACATED;

**IT IS FINALLY ORDERED** that Plaintiffs' Motion to Amend Complaint to add additional parties **(Doc. 92)** is hereby GRANTED. Plaintiffs have **thirty (30) days** from the day this Order is entered in which to add the CAM Entities as separately named Defendants.

_____
UNITED STATES DISTRICT JUDGE